# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAWRENCE L. BARRIENTEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. CIV-10-1119-C |
| | ) |
| ERIC FRANKLIN, Warden | ) |
| | ) |
| Respondent. | ) |

## **REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Robin J. Cauthron has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response to the petition has been filed, to which Petitioner has replied, and thus, the matter is at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions of robbery in the first degree, and assault with a dangerous weapon, following a jury trial, for which he was sentenced to twenty years imprisonment on the robbery conviction and twenty-five years on the assault conviction, with the sentences running consecutively to each other. Case No. CF-2007-1855, District Court of Oklahoma County Docket; Petition, 1-1a.[1] On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions and sentences. Barrientez v. State, No. F-2008-1154 (Okla. Crim. App. Jan. 5, 2010) (attached to Response as Ex. 3);

---

[1] Page "1a" is an unlabeled page between page 2 and page 3 of the petition.

Petition, 1a. Petitioner then filed an application for post-conviction relief, and the Oklahoma Court of Criminal Appeals affirmed the trial court's denial of that application. Barrientez v. State, No. PC-2010-0500 (Okla. Crim. App. July 8, 2010) (attached to Response as Ex. 5); Petition, 1a-2.

Petitioner raises five grounds for relief. In Ground One, he claims that he was deprived of his right to a fair trial because the State presented insufficient evidence to convict him. Petition, 2. In Ground Two, he contends that the trial court erred in allowing his prior "bad acts" to be introduced into evidence. Petition, 3. In Ground Three, he alleges that the in-court identification of him was "irretrievably tainted and unreliable." Petition, 3. In Ground Four, Petitioner argues that he received ineffective assistance of trial counsel. Petition, 3. In Ground Five, he claims he received ineffective assistance of appellate counsel. Petition, 5.

## I. FACTUAL BACKGROUND[2]

In the morning of November 26, 2006, Loretta Cowan was walking from her carport to the back door of her house when Petitioner ripped the purse she was carrying off her shoulder. In the process of taking the purse, Petitioner caused Ms. Cowan to fall to the ground, and she hit the brick retaining wall next to her house, causing injuries to her shoulder, hand, and wrist. Ms. Cowan then got up and pursued Petitioner, yelling that she

---

[2]This summary is taken from the briefs on direct appeal and is intended only as an introduction. See Response, Ex. 1, at 2-3, Ex. 2, at 1-3. The record citation to relevant facts will be provided in the discussion which follows.

2

wanted her purse back. She pursued Petitioner until she became too tired, and she sat down on the curb in front of her neighbor's house.

At that same time, Cleo Kelley was driving by Ms. Cowan's house when he heard a woman screaming and he saw Ms. Cowan chasing after Petitioner. Mr. Kelley also noticed that Petitioner had a purse in his hands, and he began following Petitioner in his truck. Petitioner then dropped the purse, and as he went back to pick it up, Mr. Kelley got out his truck and confronted him. Petitioner pulled out a knife and attempted to stab Mr. Kelley twice. Mr. Kelley avoided each attempt, and he punched Petitioner in the face, causing him to leave the purse and run off with the knife.

Four months later, on March 10, 2007, Ms. Cowan was reading the "crime stoppers" section of the newspaper when she noticed Petitioner's picture. In particular, Ms. Cowan claimed that she remembered his eyes. She then called the police and Petitioner was arrested shortly thereafter.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts

the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" Thaler v. Haynes, __ U.S. __, 130 S. Ct. 1171, 1173 (2010). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.

## III. DISCUSSION

### A. GROUND ONE–SUFFICIENCY OF THE EVIDENCE

Petitioner argues that his due process rights were violated because the State did not offer sufficient evidence at trial to prove beyond a reasonable doubt that he robbed Ms. Cowan and assaulted Mr. Kelley. Petitioner's Brief in Support, 4-5. In support, Petitioner claims that Ms. Cowan initially described him as a clean-shaven, baby-faced black male in his early twenties who was between 5'6" and 5'9" tall and who weighed approximately 160 pounds. Petitioner's Brief in Support, 5. Petitioner contends that Ms. Cowan changed her description of him to a black male in his late thirties, standing between 5'10" and 6' tall and

4

weighing 185 to 190 pounds after seeing Petitioner exit the elevator on the day of the preliminary hearing. Petitioner's Brief in Support, 5-6.

In response, Respondent claims that both Ms. Cowan and Mr. Kelley identified Petitioner as the assailant at trial and that the jury's decision to credit their testimony was reasonable. Response, 6-7. Thus, Respondent argues that the finding of the Oklahoma Court of Criminal Appeals was not contrary to or an unreasonable application of federal law. Response, 7.

In reply, Petitioner raises a number of arguments regarding why Ms. Cowan's identification was not reliable. Petitioner's Reply, 1-2. The undersigned has addressed these claims below in discussing Petitioner's Ground Three claim of tainted identification.

In reviewing this claim on direct appeal, the Oklahoma Court of Criminal Appeals affirmed the jury's verdict, stating that even though the evidence was conflicting, there was still competent evidence in the record for the jury to find beyond a reasonable doubt that Petitioner was the assailant. Response, Ex. 3, at 2.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial "does not focus on whether the trier of fact made the <u>correct</u> guilt or innocence determination, but rather whether it made a <u>rational decision</u> to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Both direct and circumstantial

5

evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998).  In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but "must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).  "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered."  Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).

The testimony at trial conflicted regarding Petitioner's physical attributes at the time of the robbery and assault.  Ms. Cowan testified that she originally described Petitioner as a clean-shaven black male with short hair who stood between 5'6" and 5'9" tall and weighed 160 pounds but that after seeing Petitioner at the preliminary hearing, she described him as standing between 5'10" and 6' tall and weighing 185 to 190 pounds.  Trial Transcript, Vol. I, 26-27, 42-44, 51-52.  Additionally, Mr. Kelley testified that Petitioner had short hair at the time of the assault, and he stated that he did not notice whether Petitioner had gold teeth. Trial Transcript, Vol. I, 71-72.  Testimony from Petitioner's mother, sister, and sister's boss indicated that at the time of the robbery and assault, Petitioner had long hair, two gold teeth, and weighed between 250 and 280 pounds.  Trial Transcript, Vol. II, 14-15, 41-45, 60. However, both the police officer present at the crime scene and the detective who investigated the case stated that it is very difficult for a victim to estimate height and weight and that it is not uncommon for a victim's estimate to be off by a little bit.  Trial Transcript,

6

Vol. I, 80, 91-92. Additionally, both Ms. Cowan and Mr. Kelley identified Petitioner at trial as their attacker, and both stated that they got a good look at him during the robbery and assault. Trial Transcript, Vol. I, 23, 29, 61-62. Ms. Cowan also testified that while she does not estimate height and weight well, she never forgets a face and that she will always remember Petitioner's eyes. Trial Transcript, Vol. I, 27, 29. Thus, while there was some conflicting testimony regarding Petitioner's appearance at the time of the robbery and assault, the jury was apprised of these conflicts and nevertheless convicted Petitioner of both crimes. Nothing shows that the jury's decision was an unreasonable application of federal law or an unreasonable determination of the facts. Accordingly, the undersigned recommends that relief be denied on Ground One.

## B. GROUND TWO–INTRODUCTION OF PRIOR "BAD ACTS"

Petitioner argues that his right to a fair trial was violated when the trial court allowed the State to introduce into evidence a "crime stoppers" newspaper article which showed his picture and noted that he had an outstanding federal warrant for a parole violation. Petitioner's Brief in Support, 7-8. Respondent responds that habeas relief must be denied because Petitioner has raised an issue concerning state law and he has failed to demonstrate prejudice. Response, 7-9. Respondent also claims that any constitutional error was harmless because the evidence overwhelmingly showed that Petitioner was guilty. Response, 9. Petitioner replies that admission of the newspaper article prejudiced him because it deprived him of his right to a fair trial and that its admission was not harmless error because the evidence was not overwhelming regarding his guilt. Petitioner's Reply, 2-3.

7

On direct appeal, the Oklahoma Court of Criminal Appeals stated that Petitioner's counsel failed to object to the admission of the newspaper article at trial and that Petitioner failed to demonstrate any prejudicial error arising from its admission, and thus, it found no plain error. Response, Ex. 3, at 2.

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). On habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Hooker v. Mullin, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting Williamson v. Ward, 110 F.3d 1508, 1522 (10th Cir. 1997)). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir.1999).

"Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise

considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted). The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . [and] [a]ny cautionary steps - such as instructions to the jury - offered by the court . . . ." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002).

The "crime stoppers" article in question was used by the prosecution to show how Petitioner was identified as the perpetrator of the robbery of Ms. Cowan. Ms. Cowan testified that on November 25, 2006, she was robbed by an unknown black male whose description she gave to the police officers. Trial Transcript, Vol. I, 14-26. She testified that she never forgets a face and she told the officer she could identify the person if she saw him again. Trial Transcript, Vol. I, 27-29. She testified that she regularly reads the "crime stoppers" section of the newspaper and that when she was reading it on March 10, 2007, she began trembling and got upset when she saw Petitioner's picture. Trial Transcript, Vol. I, 29-30. The article in question was admitted into evidence without any objection. Trial Transcript, Vol. I, 30-31. The exhibit shows two people listed under the "crime stoppers" section of the paper, one of whom is the Petitioner. Exhibits, Ex. 8. It shows Petitioner's name and age and states that he is wanted on a federal warrant on a parole violation. Id. The article describes Petitioner as being 5 foot 8 inches tall, weighing 175 pounds and with black hair and brown eyes. Id. Ms. Cowan testified that she called the police department and told them the person who robbed her was pictured in the "crime stoppers" section of that newspaper. Trial Transcript, Vol. I, 31-32. The prosecutor did not point out in any way the

9

fact that Petitioner was wanted on the federal parole violator warrant, but on cross-examination, Petitioner's attorney brought out the fact that the article indicated Petitioner was wanted for a federal parole violation warrant. Trial Transcript, Vol. I, 46. However, Ms. Cowan testified that she knew nothing about the parole violation. Id.

It certainly would have been better had the trial court made sure the article was redacted to eliminate any reference to Petitioner being wanted or the fact that he was wanted on federal parole violation. However, the undersigned cannot say that the admission of the newspaper article into evidence rendered Petitioner's trial fundamentally unfair. Ms. Cowan was examined and cross-examined extensively as to her identification of the Petitioner, including her identification of Petitioner in the newspaper article, at the preliminary hearing and again at trial. The jury was given at least three pertinent instructions to guide them in weighing the evidence on the identification. In Instruction No. 13, the Court instructed the jury that evidence had been introduced that the Petitioner had allegedly committed an offense other than that charged in the Information. The jury was instructed that it could not consider that evidence as proof of guilt of the Petitioner on the offenses charged in the Information. Original Record, 187. Secondly, the jury was instructed in Instruction No. 15 that eyewitness identification was to be scrutinized with extreme care. Original Record, 190. The judge noted the possibility of human error in identification and he instructed the jury as to various factors the jury should consider in determining the credibility of the eyewitness identification. Id. Further, the judge instructed the jury that since it was the State's burden to prove the identity of the Petitioner, if there was a reasonable doubt as to that identity,

Petitioner must be found not guilty. Id. Lastly, in Instruction No. 16, the judge instructed the jury as to evidence that Ms. Cowan and the other eyewitness, Cleo Kelley, made statements inconsistent with their testimony at trial and thus the jury could consider the impeachment evidence in determining their credibility. Original Record, 192. The trial came down to whether the jury believed the eyewitness' identification of Petitioner, and although the newspaper article mentioned that Petitioner was wanted on a federal parole violator warrant, no emphasis was placed on that fact. The article was strictly used to show how Petitioner was identified. The jury not only heard the eyewitness' testimony, but they received proper guidance from the Court in weighing that evidence and thus it was up to the jury to determine the credibility of the eyewitness identification. Therefore, it is recommended that relief be denied on Ground Two.

### C. GROUND THREE–TAINTED IDENTIFICATION

Petitioner argues that Ms. Cowan's in-court identification was tainted by suggestive pretrial identification procedures. Petitioner's Brief in Support, 8. In support, he contends that Ms. Cowan was never shown a photographic lineup and that her first opportunity to identify him was prior to the preliminary hearing during which time an assistant district attorney asked her if "that was him." Petitioner's Brief in Support, 8-9. Petitioner also alleges that the identification just prior to the preliminary hearing was unreliable because he was dressed in a red jumpsuit and the other detainees were dressed in orange jumpsuits. Petitioner's Brief in Support, 9-10. He argues that this pretrial identification was essentially the same as an identification by a single person lineup. Petitioner's Brief in Support, 11.

11

Thus, he claims that Supreme Court precedent regarding identification by photographic lineup applies to this case and that he is entitled to habeas relief under such precedent. Petitioner's Brief in Support, 11-12.

Respondent agrees that the Supreme Court precedent regarding identification by photographic lineup applies to this case, but he argues that this precedent shows that Ms. Cowan's pretrial identification was reliable and did not taint her in-court identification. Response, 13-15. In reply, Petitioner reiterates the same arguments set forth in his brief in support of his petition. Petitioner's Reply, 4-6.

On direct appeal, the Oklahoma Court of Criminal Appeals applied the following factors to Petitioner's claim: "the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Response, Ex. 3, at 3. In applying these factors, the Court found that based on the totality of the circumstances, "the in-court identification was not so tainted and unreliable that it should be deemed inadmissible." Response, Ex. 3, at 3.

The Supreme Court has held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Even if the procedure is found to be unduly suggestive,

"reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Consequently, an identification is valid if it was reliable, and the factors to be considered to determine whether an identification was reliable include " the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson, 432 U.S. at 114; accord Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Unless these factors present "'a very substantial likelihood of irreparable misidentification,' . . . such evidence is for the jury to weigh." Manson, 432 U.S. at 116 (quoting Simmons, 390 U.S. at 384).

Ms. Cowan testified that she did not participate in a lineup and that her first opportunity to identify Petitioner in person was at the preliminary hearing. Trial Transcript, Vol. I, 46, 48. She testified that prior to the preliminary hearing she was in the courthouse hallway when Petitioner was escorted off the elevator by a sheriff's deputy. Trial Transcript, Vol. I, 48. After seeing Petitioner exit the elevator, Ms. Cowan began to cry and shake. Trial Transcript, Vol. I, 54. An assistant district attorney approached her and asked if she wanted to wait in a room. When she declined, he asked if Petitioner was the person who robbed her. Trial Transcript, Vol. I, 50-51, 54. However, Ms. Cowan testified that the assistant district attorney never pointed Petitioner out to her. Trial Transcript, Vol. I, 55. She also testified that while Petitioner was in a red jail uniform and was being escorted by a deputy, this did not affect her identification of Petitioner. Trial Transcript, Vol. I, 55.

Lastly, she testified she had seen other black males in the "crime stoppers" section of the newspaper and never thought that any of those men was the one who robbed her. Trial Transcript, Vol. I, 56.

As noted in addressing Petitioner's second ground for relief, Ms. Cowan was extensively examined and cross-examined as to identification of the Petitioner. Her testimony as to the incident in the hallway outside the courtroom prior to the preliminary hearing clearly shows that she had an almost immediate reaction upon seeing the Petitioner and the prosecutor only asked her if Petitioner was the person who robbed her upon seeing her physical reaction to seeing him. Further, as noted in addressing Ground Two, the jury was thoroughly instructed on eyewitness identification. Thus, it is recommended that relief be denied on Ground Three.

### D. GROUND FOUR: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends that his trial counsel rendered ineffective assistance of counsel in failing to object to the State's introduction of both the "crime stoppers" article and his county jail record. Petitioner's Brief in Support, 12-14. Respondent responds that Petitioner is unable to show he was prejudiced by the introduction of the newspaper article. Response, 10. Petitioner replies that this evidence prejudiced him by portraying him as a career criminal. Petitioner's Reply, 3.

On direct appeal, the Oklahoma Court of Criminal Appeals found that trial counsel's failure to object to the introduction of this evidence did not deprive Petitioner of effective assistance of counsel because it did not fall outside of the wide range of competence afforded

to counsel. Response, Ex. 3, at 2. In denying Petitioner's application for post-conviction relief, the Oklahoma Court of Criminal Appeals found that it had already rejected this claim on direct appeal and that it was thus barred by the doctrine of res judicata. Response, Ex. 5, at 2.

To establish that counsel was ineffective, a habeas petitioner must show 1) counsel's performance was constitutionally deficient and 2) counsel's deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Errors are prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. Strickland, 466 U.S. at 697.

Even assuming that Petitioner's trial counsel erred in failing to object to the admission of the "crime stoppers" article and his county jail record, Petitioner's claim fails because he has not shown that he was prejudiced by such error. The undersigned has already found that

15

the State's introduction of the "crime stoppers" newspaper article did not prejudice Petitioner at trial. As to the county jail records, the transcript shows that Petitioner's county jail record sheet was introduced to show how Petitioner appeared in June 2007, some seven months after the robbery. Trial Transcript, Vol. I, 98-100. Prior to the introduction to this exhibit, the judge held a bench conference at which he noted that part of the Petitioner's defense was that he had long hair at the time of the offense and the State was seeking to introduce the exhibit in rebuttal to show that the Petitioner's hair was short within a few months after the robbery. Trial Transcript, Vol. I, 96-97. The judge first made sure the information was redacted to just show Petitioner's photographs and the address he listed as his home address. The judge then noted that it was proper rebuttal but the parties agreed to allow the evidence to be introduced during the State's case in chief rather than recalling the witness in rebuttal in order to streamline the trial. Id.

Even if it was error to admit Petitioner's county jail record, it did not prejudice him. That record merely states Petitioner's age, date of birth, and address; provides a brief physical description of Petitioner; shows his picture; and provides an emergency contact number. Original Trial Exhibits, State's Ex. 10. The record does not supply any information or even mention Petitioner's prior convictions. At most, it simply notified that jury that Petitioner had been in the custody of the county jail, something the jury already knew. Accordingly, the undersigned recommends that relief be denied on Count Four.

## E. COUNT FIVE: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, Petitioner alleges that his appellate counsel was ineffective because counsel failed to sufficiently argue that trial counsel was ineffective for failing to object to the admission of both the "crime stoppers" article and his county jail record. Petitioner's Brief in Support, 14-15. Respondent responds that Petitioner has failed to show that his appellate counsel's performance was deficient, and he further argues that Petitioner was not prejudiced by the admission of the above-mentioned evidence. Response, 16-17.

First, it is noted that appellate counsel did raise ineffective assistance of trial counsel for counsel's failure to object to the introduction of the "crime stoppers" article. Appellant's Brief, attached to Response, Ex. 1, 9. As noted previously, the Oklahoma Court of Criminal Appeals found that defense counsel's action in failing to object to the exhibit did not fall outside the wide range of competence demanded of counsel and thus did not deprive Petitioner of the effective assistance of counsel. Further, in affirming the denial of Petitioner's application for post-conviction relief, the Oklahoma Court of Criminal Appeals found that the record did not support Petitioner's claim and stated that counsel was not required to raise every possible argument on appeal. Response, Ex. 5, at 2.

The undersigned has already found that Petitioner's trial counsel was not ineffective for failing to object to the admission of the above-mentioned evidence. Thus, appellate counsel could not have rendered ineffective assistance for failing to raise or sufficiently argue that trial counsel was ineffective. See El Monsouri v. Jones, No. 07-6029, 235 Fed. Appx. 713, 716 (10th Cir. May 24, 2007) (appellate counsel was not ineffective for failing

17

to argue trial counsel's effectiveness where trial counsel's performance was not deficient); Castro v. Ward, 138 F.3d 810, 832 (10th Cir. 1998) (same). Accordingly, the undersigned recommends that relief be denied on Ground Five.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before April 5, 2011, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

Entered this 16th day of March, 2011.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE